UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

OLIVIA SNEH and                CIV. NO. 12-954 (MJD/JSM)
JORENA SNEH,

                              REPORT AND RECOMMENDATION

       Plaintiffs,

v.

THE BANK OF NEW YORK MELLON,
f/k/a THE BANK OF NEW YORK AS TRUSTEE
FOR THE CERTIFICATE HOLDERS of CWABS,INC.,
ASSET-BACKED CERTFICATES, SERIES 2007-7.

       Defendants.


This matter is before the Court on defendant's Motion to Dismiss [Docket No. 2].

Mark Mersereau, Esq. appeared on plaintiffs' behalf.  Andre T. Hanson, Esq. appeared

on defendant's behalf.  This matter was referred to the undersigned Magistrate Judge

for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule

72.1 by the Honorable Michael J. Davis, Chief Judge of the District Court.  [Docket No.

10].

## I.    BACKGROUND

### A.    <u>The Complaint</u>

Plaintiffs sued defendant Bank of New York Mellon ("BNYM") (formerly known as

The Bank of New York as Trustee for the Certificate Holders of CWABS, Inc., Asset-

Backed Certificates, Series 2007-7) in state district court generally alleging that BNYM

was not entitled to foreclose on their real property as a result of defects in the

assignments of their mortgage.  Notice of Removal, Ex. 1 (Verified Complaint) [Docket

No. 1-1].[1]  BNYM removed the matter to the United States District Court on April 16, 2012, claiming diversity of citizenship pursuant to 28 U.S.C. § 1332(a) and an amount in controversy in excess of the $75,000 threshold described by 28 U.S.C. § 1332(b). Notice of Removal ¶¶4, 5.

The facts as alleged in the plaintiffs' Complaint and related pleadings are as follows:

Plaintiffs, a married couple, executed a mortgage in favor of America's Wholesale Lender in the amount of $162,320 on May 30, 2006.  Complaint, ¶¶5, 7.[2] Supplemental Declaration[3] of Leaf Dilts McGregor in Support of Defendant's Motion to Dismiss ("Supp. McGregor Decl."), Ex. B (mortgage) [Docket No. 16].[4]  In 2009,

---

[1]     BNYM received an unsigned copy of the Complaint, which is captioned as a proceeding in the Fourth Judicial District of the state district courts.  Notice of Removal, p. 1.  The Complaint on file with the federal court is stamped "April 3, 2012 The Bank of N.Y. Mellon Legal Dept."  Id., Ex. 1.  BNYM asserted that it has never been served with the Complaint.  Id., p. 1.  The state court docket indicated that the case was filed in the state district court on March 21, 2012.  BNYM did not move to dismiss on the basis of defective service, therefore the Court did not consider BNYM's allegations regarding service.

[2]     Although not stated in the Complaint, the plaintiffs also executed a promissory note on May 30, 2006, secured by the mortgage.  Declaration of Leaf Dilts McGregor in Support of Defendant's Motion to Dismiss ("McGregor Decl."), Ex. A (promissory note) [Docket No. 5].

[3]     Exhibit B to McGregor's declaration was to have been a copy of the plaintiffs' mortgage.  McGregor Decl., ¶3, Ex. B.  However, Exhibit B was a copy of the Assignment of Mortgage, as was Exhibit C.  McGregor submitted a Supplemental Declaration on August 30, 2012, attaching a copy of the mortgage.  [Docket No. 16].

[4]     The Court may take judicial notice of public records and consider them on a motion to dismiss without converting the motion to one for summary judgment.  See Papasan v. Allain, 478 U.S. 265, 269, n. 1 (1986) (the court is "not precluded in [its] review of the complaint from taking notice of matters of public record."); Levy v. Ohl, 477 F.3d 988, 991 (8th Cir. 2007) (in this Circuit, Rule 12(b)(6) motions are not converted into motions for summary judgment simply because one party submits additional

plaintiffs began falling behind in their mortgage payments.  Id., ¶8.  On July 6, 2011, Mortgage Electronic Registration Systems, Inc. ("MERS") executed an assignment of plaintiffs' mortgage to BNYM.  Id., ¶9.  The assignment was recorded in Hennepin County on July 25, 2011.  Declaration of Leaf Dilts McGregor in Support of Defendant's Motion to Dismiss ("McGregor Decl."), Ex. C (assignment of mortgage containing recording data). [Docket No. 5].

BNYM commenced a non-judicial foreclosure (foreclosure by advertisement) against plaintiffs' property by appointing the law firm of Wilford & Geske as its attorney-in-fact and filing a Notice of Pendency of Proceeding & Power of Attorney to Foreclose. Id., Ex. D.  The Notice of Mortgage Foreclosure Sale was published in Finance and Commerce for the requisite period and a sheriff's sale was held on October 3, 2011. Id., Ex. E (Sheriff's Certificate of Sale attaching Affidavit of Publication from an agent of Finance and Commerce).  The Notice set forth the original principal part of the mortgage ($162,300); the mortgagee (MERS); the assignee of the mortgage (BNYM); the date of the assignment (7/6/11); and the amount due ($180,312.70).  Id.  BNYM, the successful bidder, purchased the home for $180,942.10.  Complaint, ¶10.

---

matters in support of or opposition to the motion. . . Some materials that are part of the public record or do not contradict the complaint may be considered by a court in deciding a Rule 12(b)(6)); Stahl v. United States Dep't of Agric., 327 F.3d 697, 700 (8th Cir. 2003) ("the district court may take judicial notice of public records and may thus consider them on a motion to dismiss.").  In addition, the Court may consider an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  Parnes v. Gateway 2000, Inc., 122 F.3d 539, 546 (8th Cir. 1997) (citing and quoting In re Donald Trump Casino Sec. Litig., 7 F.3d 357, 368 n. 9 (3d Cir. 1993)).  This Court has considered the exhibits submitted by BNYM in connection with its motion, such as the plaintiffs' executed promissory note, mortgage, recorded mortgage assignment and certificate of title, which are of public record, indisputably authentic or relied upon by plaintiffs in their Complaint.

The Complaint quotes from what plaintiffs represented was a Pooling and Service Agreement ("PSA") prospectus[5] dated June 26, 2006, they obtained from the U.S. Securities and Exchange Commission, which stated that Countrywide Home Loans, as Originator, would sell mortgage loans to CWABS, Inc., as Depositor. Complaint, ¶13. By the closing date of June 28, 2006, CWABS, Inc. would sell the mortgage loans to CWABS, Inc., Asset-Backed Certificates, Series 2006-7 as the "issuing entity." Id. The prospectus also stated that "the assignments of mortgage will not be recorded in the offices for real property records, except as set forth in the pooling and service agreements" and "the mortgage notes will be endorsed in blank." Id., ¶14. Under "restrictions on activities of the trust" the prospectus provided: "The trust will be required to act in accordance with the requirements specified in the pooling agreement that are designed to maintain the trust's existence as a legal entity separate and distinct from any other entity and to maintain the qualifications of the REMICs [real estate investment conduit] created by the pooling agreement as REMICs." Id.

The Complaint also quoted at length from a portion of the prospectus that described documentation necessary for securitization:

> There are two documents that need to be transferred as part of the securitization process—a promissory note and the security instrument (the mortgage). The promissory note embodies the debt obligation, while the security instrument provides that if the debt is not repaid, the creditor may sell the designated collateral (the house). Both the note and the mortgage need to be properly transferred. Without the note, a mortgage is unenforceable, while without the note, a mortgage is simply a [sic] unsecured debt obligation, no different from credit card debt.

---

[5] Plaintiffs did not attach a copy of the prospectus to the Complaint.

Id., ¶17.[6]

Additionally, the Complaint quoted from a November 16, 2010, Congressional Oversight Panel Report ("Congressional Report"), which examined the "Consequences of Mortgage Irregularities for Financial Stability and Mortgage Mitigation." Id., ¶15.[7] This report allegedly stated:

> As a threshold matter, a party seeking to enforce the rights associated with the mortgage must have standing in court. Standing is critical for a successful foreclosure, because if the party bringing the foreclosure does not have standing to enforce the rights attached to the note, that party may not be able to take the property with clear title that can be passed on to another buyer.

Id., ¶16.

Count I (Slander of Title) alleged that BNYM made a false statement "within the assignment" that MERS assigned a mortgage loan directly to a securitized trust and that false statement was published in a newspaper in connection with the foreclosure. Id., ¶22. The Complaint alleged that the assignment was fraudulent because the PSA stated that the loan could only be purchased directly from the Depositor (CWABS, Inc.). Id.

Count II (Fraud/Misrepresentation) alleged that BNYM intentionally concealed and misrepresented facts in connection with the assignment to facilitate an "unlawful foreclosure." BNYM's "deceitful acts" caused plaintiffs "Cruel and Unjust Hardship." Id.,

---

[6]  The Complaint is unclear as to the purpose of these extensive excerpts from the prospectus and report. The Court surmised that the purpose was to provide context for plaintiffs' allegations that the assignment of the mortgage from MERS to BNYM was void because it occurred after the closing date of the Trust.

[7]  The Complaint did not attach a copy of the Congressional Report.

¶¶24-26. The Complaint identified neither the facts BNYM concealed and misrepresented nor BNYM's "deceitful acts."

Count III (Minnesota Uniform Deceptive Trade Practices Act) alleged that BNYM concealed unrecorded assignments of the mortgage, which created a "broken chain of Title and a cloud on Title of the subject property" and "Intentional Misrepresentation of Ownership to facilitate foreclosure." Id., ¶¶27-29.

Count IV (Void the Notice of Sheriff's Sale) sought a declaration that the Notice of Sheriff's Sale was defective because it failed to name one or more of the assignees, failed to state the name of the mortagee, failed to state the proper amount due and/or the assignment of the mortgage. Id., ¶33. The Complaint did not elaborate on the specifics of these allegations. The Complaint further alleged that BNYM failed to comply with the statutory requirements regarding non-judicial foreclosure, including recording all assignments and failing to state the proper amount due. Id., ¶34. As relief, plaintiffs sought to have the Notice of Foreclosure "set aside" and unspecified injunctive relief. Id., ¶35.

Count V (Failure to Record All Assignments) alleged that there were "four or more" unrecorded assignments related to the plaintiffs' mortgage and, as a result, the foreclosure was defective because BNYM failed to record these assignments. Id., ¶40. Plaintiffs sought an injunction to prevent BNYM from commencing a foreclosure by advertisement, even though the property had already been sold. Id., ¶41.

As relief, plaintiffs sought unspecified "court intervention" to prevent BNYM from taking any further action to transfer title to the property or remove plaintiffs from the property "unless and until the following proof of standing, authority, assignment of

mortgages and notices are presented:"[8]  Complaint, Prayer for Relief, ¶1.  Plaintiffs also

sought general, compensatory, special, treble and punitive damages,[9] a judgment

---

[8]      The Prayer for Relief does not describe what these "proofs" are.  Complaint, Prayer for Relief, ¶1.

[9]      It is not relevant to this Court's analysis of BNYM's Motion to Dismiss, but the Court notes that "'[i]n the Federal Courts of this District, the pleading of punitive damage claims, under causes of actions premised upon the law of the State of Minnesota, must generally conform to the requirements of Minnesota Statutes Sections 549.191 and 549.20.'"  Berczyk v. Emerson Tool Co., 291 F. Supp.2d 1004, 1008 (D. Minn. 2003) (quoting Olson v. Snap Prods., Inc., 29 F. Supp.2d 1027, 1034 (D. Minn. 1998)) (citations omitted).  Consequently, "[u]nder Minnesota law, a plaintiff may not seek punitive damages in an initial complaint but must do so by making a motion to amend the pleadings.  Popp Telecom, Inc. v. American Sharecom, Inc., 361 F.3d 482, 491 n. 10 (8th Cir. 2004) (citing Minn. Stat. §549.191).

The requirement that a plaintiff must make a motion to amend its pleadings to include punitive damages was "enacted to prevent frivolous punitive damage claims by allowing a court to determine first if punitive damages are appropriate."  Gamma-10 Plastics, Inc. v. American President Lines, Ltd., 32 F.3d 1244, 1255 (8th Cir. 1994) (citation omitted).

Minn. Stat. § 549.191 provides:

> Upon commencement of a civil action, the complaint must not seek punitive damages.  After filing the suit a party may make a motion to amend the pleadings to claim punitive damages.  The motion must allege the applicable legal basis under section 549.20 or other law for awarding punitive damages in the action and must be accompanied by one or more affidavits showing the factual basis for the claim.  At the hearing on the motion, if the court finds prima facie evidence in support of the motion, the court shall grant the moving party permission to amend the pleadings to claim punitive damages.  For purposes of tolling the statute of limitations, pleadings amended under this section relate back to the time the action was commenced.

Minn. Stat. §549.191.

voiding the assignment of mortgage dated July 6, 2011, as well as costs and fees.  Id.,
¶¶2-8.

**B.**   **BNYM'S MOTION TO DISMISS**

BNYM noted that the allegations in the Complaint are not clear, but paragraph 17
suggested that "both the note and the mortgage need to be properly transferred.
Without the note, a mortgage is unenforceable."  Defendant the Bank of New York
Mellon's Memorandum in Support of its Motion to Dismiss Plaintiff's Complaint ("BNYM
Mem."), p. 7 [Docket No. 4].  BNYM construed this language to mean that plaintiffs were
bringing an iteration of the "show me the note" lawsuits that have flooded this and other
districts in recent years.  Id.  "Show me the note" lawsuits are based on the faulty theory
that unless a lender possesses the borrower's original promissory note, it may not
foreclose on the property by advertisement.  BNYM contended that this theory has been
rejected by every court in this district to consider it.  Id., pp. 9-16 (citations omitted).

Further, BNYM denied that there were any defects in the chain of title to plaintiffs'
mortgage, which BNYM noted was "only one link long."  Id., p. 19.  BNYM indicated that
MERS was the original mortgagee and assigned its interest to BNYM.  Id.; see also
Suppl. McGregor Decl., Ex. B, p. 1 (copy of plaintiffs' mortgage, describing MERS as
"the mortgagee under this Security Instrument."); McGregor Decl., Ex. C (Assignment of
Mortgage from MERS to BNYM).

As for plaintiffs' allegation that the Trust breached the PSA by directly acquiring
the note from MERS, BNYM maintained that claim fails because plaintiffs lack standing
to enforce any provisions of the PSA where they were not a party to it and they did not
allege that MERS ever had an interest in their note.  BNYM Mem., pp. 7, 17-19 (citing

and quoting Anderson v. Countrywide Home Loans, Civ. No. 10-2685 (MJD/JJG), 2011 WL 1627945 at * 4 (D. Minn. Apr. 8, 2011) ("Plaintiffs have cited no authority that an assignment made in contravention of a PSA is invalid. Moreover, Plaintiffs do not have standing to challenge the validity of the assignment to the Trust because they are not parties to the PSA."), 2011 WL 1630113 (D. Minn. April 28, 2011) (Order Adopting Report and Recommendation).

As to plaintiffs' fraud and misrepresentation claim, BNYM argued that the allegations were entirely conclusory and had to be dismissed. BNYM Mem., p. 8. BNYM contended that plaintiffs' Minnesota UDTPA also failed because they did not allege unrecorded transfers of legal title to their mortgage, only an unrecorded transfer of their promissory note. Id.

Finally, BNYM submitted that plaintiffs' request for a declaration voiding the assignment of their mortgage and a declaration that BNYM failed to satisfy the statutory prerequisites of foreclosure by advertisement was based on the incorrect theory that transfers of their promissory note had to be recorded for subsequent assignments of their mortgage to be valid. Id.

In response to defendant's Motion to Dismiss, plaintiffs restated their claim, albeit in a different form, that BNYM breached the PSA (or the REMIC Trust itself) by accepting the mortgage as an asset of the Trust well after the closing date of the Trust and, therefore, the assignment of the mortgage was void. Plaintiff's [sic] Memorandum of Law in Opposition to Defendant's Motion to Dismiss Plaintiff's [sic] Verified Complaint ("Pls.' Resp."), pp. 4-7 [Docket No. 8].

## II.    STANDARD OF REVIEW

In considering a motion to dismiss under Rule 12(b)(6), the pleadings are construed in the light most favorable to the non-moving party, and the facts alleged in the complaint must be taken as true.  Ashley County, Ark. v. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009).  In addition, "the court must resolve any ambiguities concerning the sufficiency of the plaintiffs' claims in favor of the plaintiffs, and give the plaintiffs the benefit of every reasonable inference drawn from the well-pleaded facts and allegations in their complaint."  Ossman v. Diana Corp., 825 F. Supp. 870, 880 (D. Minn. 1993) (internal quotation marks and citations omitted).  At the same time, to withstand a motion to dismiss under Rule 12(b)(6), litigants must properly plead their claims under Rule 8 of the Federal Rules of Civil Procedure and meet the principles articulated by the United States Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009).

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  This pleading requirement does not require detailed factual allegations.  Martin v. ReliaStar Life Ins. Co., 710 F. Supp. 2d 875, 886 (D. Minn. 2010) (citing Twombly, 550 U.S. at 555).  On the other hand, a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).  To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 545.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal,

556 U.S. at 677 (quoting Twombly, 550 U.S. at 556). "[T]he plausibility standard, which requires a federal court complaint to 'state a claim for relief that is plausible on its face . . . asks for more than a sheer possibility that a defendant has acted unlawfully." Ritchie v. St. Louis Jewish Light, 630 F.3d 713, 717 (8th Cir. 2011) (internal quotation and citation omitted). "Determining whether a complaint states a plausible claim for relief will, . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. [10]

In summary, the pleading standard articulated by Rule 8 "does not require detailed factual allegations, but it [does demand] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 678 (internal quotation marks and citations omitted).

Plaintiffs were unrepresented by counsel until three days before the hearing on BNYM's motion and apparently drafted their own Complaint and Memorandum of Law in Opposition to Defendant's Motion to Dismiss. See Notice of Limited Appearance of Mark Mersereau, Esq. [Docket No. 14]. As a result, this Court applied the traditionally liberal construction afforded to pro se pleadings. See Haines v. Kerner, 404 U.S. 519, 520 (1972) (pro se complaints, "however inartfully pleaded" are held to "less stringent standards than formal pleadings drafted by lawyers."). "'[I]f the court can reasonably

---

[10]    In their responsive pleading, plaintiffs relied on an extra-jurisdictional, pre-Iqbal and Twombly case to support their argument that "[c]ourts rarely grant motions to dismiss for failure to state a claim because 'the threshold is exceedingly low for a complaint to survive a motion to dismiss for failure to state a claim.'" Pls.' Resp., p. 3 (citing Hawkins v. City of Greenville, 101 F. Supp.2d 1356, 1359 (M. D. Ala. 2000)). While plaintiffs were pro se in connection with their written submissions and as discussed below, their pleadings are entitled to liberal construction, nonetheless, the Court must apply the standards described by the Supreme Court in Iqbal and Twombly in deciding BNYM's motion.

read the pleadings to state a valid claim on which the [plaintiff] could prevail, it should do so despite the [plaintiff's] failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements.'" Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999) (quoting Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir.1991)). But the court's liberal construction does not extend to allowing defective and insufficiently pled claims to proceed. Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004) (pro se complaint must allege facts sufficient to support the claims advanced); Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir.1985). ("[A]lthough it is to be liberally construed, a pro se complaint must contain specific facts supporting its conclusions."); Kaylor v. Fields, 661 F.2d 1177, 1183 (8th Cir.1981) ("[P]leadings * * * brought Pro se [ ] are to be liberally construed. * * * But a well-pleaded complaint must contain something more than mere conclusory statements that are unsupported by specific facts.") (citations omitted). Neither may the courts, in granting the deference owed to pro se parties, "assume the role of advocate for the pro se litigant." Barnett, 174 F.3d 1133.

> When we say that a pro se complaint should be given liberal construction, we mean that if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework. That is quite different, however, from requiring the district court to assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint.

Stone, 364 F.3d at 915. Consequently, a court "will not supply additional facts, nor will [it] construct a legal theory for plaintiff that assumes facts that have not been pleaded." Id. (quoting Dunn v. White, 880 F.2d 1188, 1197 (10th Cir.1989)).

"Ordinarily dismissal of a [pleading] for failure to comply with Rule 8 should be with leave to amend." Michaelis v. Nebraska State Bar Ass'n., 717 F.2d 437, 438-39 (8th Cir. 1983). Nonetheless, when a complaint is so deficient or defective that the court is convinced that its defects cannot be cured through re-pleading, dismissal with prejudice is appropriate. See McLean v. United States, 566 F.3d 391, 400 (4th Cir. 2009) ("to the extent . . . that a district court is truly unable to conceive of any set of facts under which a plaintiff would be entitled to relief, the district court would err in designating [a] dismissal to be without prejudice. Courts, including this one, have held that when a complaint is incurable through amendment, dismissal is properly rendered with prejudice and without leave to amend."); McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc., 339 F.3d 1087, 1096 (9th Cir. 2003) (dismissal with prejudice is appropriate where "deficiencies in [plaintiff's] claims cannot be cured by amendment"); Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (a pro se litigant should be given chance to amend complaint unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment."); Ikechi v. Verizon Wireless, Civ. No. 10-4554 (JNE/SER), 2011 WL 2118797 at *5, n.6 (D. Minn. April 7, 2011) (recommending dismissal with prejudice of plaintiff's fraud claims because it was unlikely that plaintiff could cure the defective pleading on re-pleading), 2011 WL 2118791 at *3 (D. Minn. May 25, 2011) (Order adopting Report and Recommendation)

The Court now applies these principles to BNYM's motion to dismiss.

### III.    ANALYSIS

#### A.    Slander of Title (Count I)

Count I of the Complaint (Slander of Title) appeared to depend on Plaintiff's theory that there was a breach of the PSA in the way in which the Trust acquired plaintiffs' mortgage from MERS.  Complaint, ¶¶19-23.  As a preliminary matter, this claim fails for lack of factual support.  The Complaint recites the elements of slander of title under Minnesota law, but provides no factual support for the allegations.  Complaint, ¶20.  This is a classic example of the type of pleading that is unacceptable under the Iqbal and Twombly pleading standards.  Iqbal, 556 U.S. at 663 ("[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements.") (citing Twombly, 550 U.S. at 555).

However, even if the factual deficiencies of this claim were cured, the law in this jurisdiction is clear.  A plaintiff does not have standing to challenge the validity of an assignment to a Trust because the plaintiff is not a party to the PSA.  Novak v. JP Morgan Chase Bank, N.A., Civ. No. 12-589 (DSD/LIB), 2012 WL 3638513 at *6 (D. Minn. Aug. 23, 2012) (dismissing plaintiffs' complaint with prejudice and noting that they lacked standing to challenge any purported breach of a PSA); Stinson v. U.S. Bank, N.A., Civ. No. 12-68 (SRN/AJB), 2012 WL 2529354 at *3 (D. Minn. June 12, 2012) ("[T]o the extent that the [plaintiffs] allege that the defendants did not comply with the provisions of the PSA, the [plaintiffs] have no standing to assert claims on this basis because they are not parties or third-party beneficiaries to such agreements."); Karnatcheva v. JP Morgan Chase Bank, N.A., Civ. No. 11-3452 (MJD), 2012 WL

1657531 at *6 (D. Minn. May 11, 2012) ("[P]laintiffs have no standing to assert any breaches of the PSAs, as they are not third parties or third party beneficiaries to such agreements."); Anderson, 2011 WL 1627945 at *4 (D. Minn. April 8, 2011) (rejecting plaintiff's challenge of an assignment to a trust after the date on which the Trust ceased accepting assignments and noting that "[p]laintiffs have cited no authority that an assignment made in contravention of a PSA is invalid. Moreover, Plaintiffs do not have standing to challenge the validity of the assignment to the Trust because they are not parties to the PSA."), 2011 WL 1630113 (D. Minn. Apr. 28, 2011) (Order adopting Report and Recommendation); Greene v. Home Loan Servs., Inc., Civ. No. 09-719 (DWF/JJK), 2010 WL 3749243 at *4 (D. Minn. Sept. 21, 2010) (stating that "[P]laintiffs do not have standing to bring their challenge regarding the securitization of the mortgage or the Pooling and Service Agreement. Even assuming this matter was adequately pled, which it was not, Plaintiffs are not a party to the Pooling and Service Agreement and therefore have no standing to challenge any purported breach of the rights and obligations of that agreement."). Plaintiffs' slander of title claim should be dismissed because they have no standing to assert the claim.

B.    **Fraud and Misrepresentation (Count II)**

Plaintiffs' claim of fraud and misrepresentation is based on their allegation that BNYM intentionally misrepresented and concealed material facts relating to the assignment of the mortgage. Complaint, ¶¶24-26. But plaintiffs describe no facts to support this claim. Further, while plaintiffs did not indicate whether they were pleading intentional or negligent misrepresentation, "[u]nder Minnesota law, any allegation of misrepresentation, whether labeled as a claim of fraudulent misrepresentation or

negligent misrepresentation, is considered an allegation of fraud which must be pled with particularity." Trooien v. Mansour, 608 F.3d 1020, 1028 (8th Cir. 2010). Accordingly, the heightened pleading requirements of Fed. R. Civ. P. 9(b) apply to claims of both fraud and negligent misrepresentation. To meet this standard, a plaintiff must allege "the who, what, where, when, and how" of the alleged fraud. BJC Health Sys. v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007). "Because one of the main purposes of [Rule 9(b)] is to facilitate a defendant's ability to respond and to prepare a defense. . . conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." Commercial Prop. Invs., Inc. v. Quality Inns Int'l., Inc., 61 F.3d 639, 644 (8th Cir. 1995).

Plaintiffs' fraud and misrepresentation claim is completely devoid of any factual support and does not meet the Rule 8 pleading standard, much less the heightened standard of Rule 9(b). Therefore, that claim should be dismissed

**C.    Failure to Record Assignments (Counts III, IV, V)**

Counts III (Minnesota UDTPA), IV (Void the Notice of Sheriff's Sale), and V (Failure to Record All Assignments) all hinge on plaintiffs' allegation that there were "at least" four unrecorded assignments "related to plaintiff's [sic] mortgage loan." Complaint ¶39. Plaintiffs provided no factual support for this claim. In fact, they did not even describe or identify the "four unrecorded assignments." Under Iqbal and Twombly that alone is a basis to dismiss the complaint.

Here however, as BNYM pointed out, the evidence establishes that the chain of title here is short—there was one assignment of the mortgage from MERS to BNYM and that assignment was recorded. McGregor Decl., Ex. C (Assignment of Mortgage with

recording data). Moreover, if plaintiffs were alleging a failure by BNYM to record assignments of the promissory note rather than the mortgage—and it is not at all clear what plaintiffs meant by the words "unrecorded assignments related to plaintiff's [sic] mortgage loan"—neither the foreclosure by advertisement statute nor the governing case law obligates BNYM to record those assignments. <u>See</u> Minn. Stat. §580.02 (3) (describing the four prerequisites for foreclosure by advertisement, including the requirement that "the <u>mortgage</u> has been recorded and, if it has been assigned, that all assignments thereof have been recorded; provided, that, if the <u>mortgage</u> is upon registered land, it shall be sufficient if the <u>mortgage</u> and all assignments thereof have been duly registered.") (emphasis added); <u>Jackson</u>, 770 N.W.2d 487, 496 (Minn. 2009) ("[W]e have concluded that promissory note assignments do not have to be recorded under the plain language of the foreclosure by advertisement statutes.").

At oral argument on defendant's motion plaintiffs' counsel directed the Court to <u>Gewecke v. U.S. Bank, N.A.</u>, Civ. No. 09-1890 (JRT/LIB), 2011 WL 4538083 (D. Minn. June 6, 2011) (Report and Recommendation), 2011 WL 4538088 (D. Minn. Sept. 29, 2011) (Order Adopting Report and Recommendation), which counsel argued presented the same issue regarding assignments as that raised in plaintiffs' Complaint. There is, however, a crucial and dispositive difference between the claim presented in <u>Gewecke</u> and that raised in plaintiffs' Complaint. The plaintiffs in <u>Gewecke</u> alleged <u>facts</u> to support their claim that there were actual unrecorded assignments of their <u>mortgage</u> and, therefore, the lender had failed to fulfill the recording or registration requirement of Minn. Stat. §580.02. In adopting Magistrate Judge Brisbois' Report and Recommendation in its entirety, Judge Tunheim concluded that the plaintiffs' <u>factual</u>

allegations in connection with this claim were sufficient to survive the lender's motion to dismiss.

Here, plaintiffs have not alleged any facts to support that there was an unrecorded assignment of their mortgage.[11]  Indeed, as stated above, plaintiffs' allegations are that there are four or more unrecorded assignments "related to their loan" (Complaint, ¶39) (emphasis added) for which no factual support has been provided.  Therefore, lacking any factual support for their bald assertions, Counts III, IV (Void the Notice of Sheriff's Sale), and V (Failure to Record all Assignments) fail.

Plaintiffs' claims under the Minnesota UDTPA[12] (Count III) fail for the additional reasons that they have not alleged any of the elements of a UDTPA claim and have not

---

[11]    Moreover, unlike Gewecke, the facts submitted by BNYM, the loan, the mortgage, the Assignment of Mortgage and the judicial foreclosure documents all contradict plaintiffs' conclusory claims.  See McGregor Decl., Exs. A, C-E, Supp. McGregor Decl., Ex. B.

[12]    Minnesota Statute § 325D.44, subd. 1 describes acts constituting a deceptive trade practice as follows:

> A person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person:
>
> (1) passes off goods or services as those of another;
>
> (2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
>
> (3) causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another;
>
> (4) uses deceptive representations or designations of geographic origin in connection with goods or services;

provided any factual support for the claim.  Furthermore, claims under the MDTPA are governed by the heightened pleading standards of Rule 9(b).  Dietz v. Beneficial Loan and Thrift Co., Civ. No. 10–3752 (DWF/TNL), 2011 WL 2412738, at *5 (D. Minn. June 10, 2011); Tuttle v. Lorillard Tobacco Co., 118 F.Supp.2d 954, 963 (D. Minn. 2000).  As previously noted, Rule 9(b) requires a party alleging fraud to plead with particularity.

---

(5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;

(6) represents that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used, or secondhand;

(7) represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

(8) disparages the goods, services, or business of another by false or misleading representation of fact;

(9) advertises goods or services with intent not to sell them as advertised;

(10) advertises goods or services with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity;

(11) makes false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;

(12) in attempting to collect delinquent accounts, implies or suggests that health care services will be withheld in an emergency situation; or

(13) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

Plaintiffs' Minnesota DTPA claim fails to meet either the Rule 8 or Rule 9 pleading standards and should be dismissed.

For all of these reasons Counts III, IV and V should be dismissed.

### D.    All Claims Based on a "Show me the Note" Theory Fail

BNYM dedicated much of its brief to debunking plaintiffs' "show me the note" theory. BNYM Mem., pp. 9-17. At the motion hearing plaintiffs' counsel vigorously disputed that this was a "show me the note" case, arguing instead that his clients were contesting the validity of the foreclosure on the ground that the Trust did not have the authority to take in plaintiffs' mortgage after the closing date and, therefore, BNYM lacked authority to foreclose. See also Pls.' Resp., pp. 4-7 (arguing that accepting the assignment of the mortgage after the closing date of the trust rendered the assignment void and deprived BNYM of standing to foreclose.).[13] BNYM's counsel countered that paragraph 17 of the Complaint clearly set forth a "show me the note" claim by alleging "without a note, a mortgage is unenforceable, while without the mortgage, a note is simply an unsecured debt obligation, no different from credit card debt." Complaint, ¶17 (quoting the Congressional Report, p. 16, n. 35).

To the extent plaintiffs are relying on a theory that BNYM was required to have ownership of or an interest in their promissory note to foreclose, that theory has been rejected by every court in this jurisdiction to consider it. See e.g. Peterson v. CitiMortgage, Inc., Civ. No. 11-2385 (SRN/JJG), 2012 WL 1971138 at *2 (D. Minn. June 1, 2012) (dismissing complaint and noting that "the essence of the Complaint is Plaintiff's claim that Defendants do not have valid title to the original notes for their

---

[13]    For the reasons previously described, this Court concluded that plaintiffs did not have standing to challenge the PSA.

mortgages and therefore cannot legally foreclose on their mortgages. Plaintiffs' theory has been rejected by every court to consider it, including both the Eighth Circuit. . .and the Minnesota Supreme Court. . . every judge in this District to have ruled on the merits of these cases has dismissed them."); Pope v. Wells Fargo Bank, N.A., Civ. No. 11-2496 (SRN/FLN), 2012 WL 1886493 at *2 (D. Minn. May 23, 2012) ("At bottom, Plaintiffs' claim is that Defendants do not have valid title to the original notes for their mortgages and therefore cannot legally foreclose on their mortgages. Plaintiffs' theory has been rejected by every court to consider it, including the Minnesota Supreme Court."); Karnatcheva, 2012 WL 1657531 at *5 (dismissing complaint and stating that "to the extent that Plaintiffs argue the mortgage liens are invalid because the Bank Defendants did not hold the note, otherwise referred to as 'show me the note,' such claim has no merit."); Olson v. Bank of America, N.A., Civ. No. 11-3710 (PAM/FLN), 2012 WL 1660615 at *3 (D. Minn. April 19, 2012) ("[P]laintiffs' argument is that Defendants do not own the notes for Plaintiffs' mortgages and thus cannot foreclose on those mortgages. But as Judge Schiltz has so thoroughly discussed in Welk, this argument has no merit whatsoever." (citation omitted)); Larsen v. Bank of Amer., N.A., Civ. No. 11-1775 (MJD/JSM), 2011 WL 6065426 at *8 ("[a] mortgagee does not need to have an interest in a promissory note to foreclosure on a mortgage).

Therefore, to the extent that any of plaintiffs' causes of action depend on a theory that BNYM could not foreclose because it did not possess or have an interest in the promissory note, those claims should be dismissed as meritless.

## IV. CONCLUSION

The essential facts regarding the propriety of BNYM's foreclosure by advertisement are undisputed: BNYM was the assignee of the mortgage; the assignment of the mortgage was recorded; BNYM recorded its Notice of Pendency of Proceeding and Power of Attorney to Foreclose; a Sheriff's Sale was conducted, a Sheriff's Certificate of Sale was issued;[14] and the redemption period has passed. Plaintiffs' conclusory statements that the foreclosure was unlawful and that there were defects in the published notices that preceded the foreclosure (Complaint, ¶¶33-35) are completely unsupported by any facts. Further, plaintiffs have no standing to challenge the foreclosure based on BNYM's purported breach of the PSA or Trust.

For all of these reasons, this Court recommends that plaintiffs' Complaint be dismissed. Further, the Court recommends that all of these claims be dismissed with prejudice because the Court does not believe that the defects in the Complaint can be cured through re-pleading. Plaintiffs lacked standing to assert slander of title; their claims under Counts II, IV and V fail because there is no requirement that assignments of a promissory note be recorded for a valid non-judicial foreclosure; and the fallacy of plaintiff's "show me the note" claim has been established in this jurisdiction beyond a shadow of a doubt.

---

[14] Pursuant to Minn. Stat. §580.19 "Every sheriff's certificate of sale made under a power to sell contained in a mortgage shall be prima facie evidence that all the requirements of law in that behalf have been complied with, and prima facie evidence of title in fee thereunder in the purchaser at such sale, the purchaser's heirs or assigns, after the time for redemption therefrom has expired." The redemption period in this case expired on April 3, 2012. BNYM Mem., p. 3. Plaintiffs' mortgage contained a power of sale. Suppl. McGregor Decl., Ex. B, ¶22. Plaintiffs submitted no evidence to rebut the prima facie evidence supplied by the Sheriff's Certificate of Sale that the foreclosure was conducted properly.

Finally, as to plaintiffs' fraud and misrepresentation claim, the mortgage documents submitted by BYNM described the complete (and short) history of plaintiff's mortgage. Nowhere is there any indicia of fraud or misrepresentation by BNYM in connection with the mortgage transactions and this Court cannot conceive of a set of circumstances that would support such a claim. The facts are very straightforward—the mortgage allowed MERS as mortgagee to assign its interests in the mortgage. MERS assigned its interests to BNYM, which foreclosed on the property in compliance with Minnesota's non-judicial foreclosure statute. Under these circumstances, this Court cannot conclude that allowing the plaintiffs to replead would yield anything other than another round of hopelessly vague allegations against BNYM, completely lacking in factual support.

**V.     RECOMMENDATION**

For the reasons set forth above, IT IS RECOMMENDED THAT:

1.     Defendant Bank of New York Mellon's Motion to Dismiss [Docket No. 2] be **GRANTED.**

2.     This suit be **DISMISSED WITH PREJUDICE**.


Dated: October 30, 2012                     *Janie S. Mayeron*
                                            JANIE S. MAYERON
                                            United State Magistrate Judge

**<u>NOTICE</u>**

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **November 13, 2012**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within fourteen days after service thereof. A judge shall make a de novo determination of those portions to which objection is made.